**In re SMITH CORONA CORPORATION, SCM Office Supplies, Inc., SCC LI Corp., Hulse Manufacturing Company, Smith Corona Overseas Holdings, Inc., SCM (United Kingdom) Limited, and SCM Inter–American Corporation.**

**Bankruptcy No. 95–788 (HSB).**

United States Bankruptcy Court,
D. Delaware.

June 17, 1997.

John D. Demmy, Morris, James, Hitchens & Williams, Wilmington, DE, Matthew E. Roy, Oppenheimer, Wolff & Donnelly, Minneapolis, MN, for Prudential.

Joel A. Waite, Young, Conaway, Stargatt & Taylor, Wilmington, DE, Daniel A. Lowenthal, III, Winthrop, Stimson, Putnam & Roberts, New York City, for debtors.

HELEN S. BALICK, Chief Judge.

This is the court's decision on the objection of Smith Corona Corporation to a proof of administrative claim filed by the Prudential Insurance Company of America. Docket no. 1475. A hearing on this contested matter was held on March 10.1997. At that hearing, counsel for both parties relied upon a joint stipulation of facts, and presented oral argument. Additionally, two letters from Prudential to Smith Corona attached to Smith Corona's memorandum of law were stipulated to be admissible, and the court also accepted a one-page calculation offered for the purposes of summarizing Smith Corona's mathematical arguments. The evidentiary record was closed and the matter submitted to the court on the written and oral argument. This is a core matter. 28 U.S.C. § 157(b)(2)(B).

I. *Facts*

In October 1989, Prudential and Smith Corona executed a voluminous document entitled "Group Contract No. GW–21671," which provided for certain health, life and long and short term disability insurance coverage to Smith Corona's employees. The term of the contract is disputed, and that dispute is resolved in section II.A. Pursuant to the contract, Smith Corona pays Prudential regular premiums, and an additional premium for the insurance coverage. Regular premiums are monthly premiums paid over a 12–month period. The additional premium is due on the last day of each contract year (a contract year runs from October 1 of one year to September 30 of the next). The contract also provides for interest on unpaid premiums. Finally, the contract provides that Smith Corona participates in a dividend program administered by Prudential. As of July 5, 1995, the date Smith Corona and related companies filed their Chapter 11 petitions, Smith Corona was current on all premiums.

A bar date of October 31, 1995 was set for pre-petition, general unsecured claims. Prudential was notified of this bar date, but did not file a proof of claim. A bar date of October 18, 1996 was set for administrative claims. Prudential was notified of this bar date, and on October 17, 1996, filed its claim.

This administrative claim was originally filed in the amount of $1,433,811.00, however, Prudential has amended the amount several times. The most recent amendment is found in its trial memorandum, in which Prudential asserts it is entitled to an administrative claim of $1,264.327.00. Prudential's claim, as amended, is comprised of three components:

1. $995,805.00 for the additional premium due September 30, 1995 (a date later than the date of the filing of Smith Corona's Chapter 11 petition);

2. $116.310.00 for accrued interest on this unpaid premium; and

3. $152.212.00 for the additional premium due September 30, 1996.

These three numbers add up to $1,264,327.00. To confuse matters slightly, Smith Corona's memorandum of law states that, in addition to this dollar amount, "Prudential is seeking interest in the amount of $19,605 and penalty interest in the amount of $39,406." Docket no. 1605 at 7 (emphasis in the original). Prudential's papers, however, do not claim these additional amounts, and therefore, they will not be considered as part of Prudential's claim.

There is one further mathematical aspect to Prudential's claim. Smith Corona's confirmed plan provides that allowed administrative claims are paid in full in cash. Prudential, however, does not expect a payment of $1,264.327.00 if it prevails in this contested matter. The contract entitles Smith Corona to a dividend under certain circumstances, as discussed in section II.B. In its original proof of claim, Prudential asserted that no dividend was presently due to Smith Corona. In later filed memoranda and at oral argument, however, Prudential acknowledged that Smith Corona was entitled to a dividend under the contract for the year ending September 1995 and that the dividend amount should be subtracted from Prudential's claim for premiums and interest.[1] Prudential believes that Smith Corona is entitled to a dividend of $465,458.00 for the 1995 contract year, and thus Prudential seeks a cash payment of $798,869.00, and not the $1,264,-327.00 amount.

■ The cited basis for the administrative priority is section 503(b) of Title 11, which states in relevant part: "There shall be allowed administrative expenses, ... including—the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). The burden of proof is upon Prudential to show that its claim is entitled to administrative expense priority. *In re Continental Airlines*, 146 B.R. 520, 526 (Bankr.D.Del.1992).

Smith Corona has filed an objection to this claim and disputes the 1995 additional premium amount, the amount of the 1995 dividend, and the 1995 interest due. These disputes are discussed in sections II. A, B, C, respectively. Smith Corona asserts that Prudential is entitled to an administrative expense priority of no more than $235,000.00, and that the remainder of the claim should be disallowed.

## II. *Discussion*

### A. *The 1995 Additional Premium Issues*

■ Smith Corona agrees that premiums for post-petition insurance coverage under the contract provide a benefit to the estate and satisfy the requirements of 11 U.S.C. § 503(b). Docket no. 1605 at 15. Smith Corona also agrees that, as a mathematical matter, it is obligated under the contract for an additional premium due September 30, 1995 in the amount of $995,805.00. However, Smith Corona objects to the $995,805.00 amount because it believes that:

1. A portion of the September 1995 additional premium obligation should be treated as a pre-petition debt (discussed immediately below); and

---

1. *E.g.,* Transcript at 33 ("as a matter of business practice ... [t]here's no point in sending checks back and forth.")

2. Smith Corona is entitled to a dividend of $845.407.00 that should be offset against the remaining post-petition portion of the 1995 additional premium (this argument is discussed in section II.B.).

Smith Corona's first argument asserts that the § 995,805.00 additional premium contract obligation should be prorated between pre-petition and post-petition periods. There is no question that under the contract, the additional premium was not due on the petition date, and did not become clue until September 30.1995, which is post-petition.

Nonetheless, Smith Corona argues that:

a. The additional premium "relates" to the prior contract period of October 1, 1994 through September 30, 1995 and that therefore a portion of this premium (about nine of twelve months) "relates" to coverage provided for Smith Corona's employees pre-petition; and

b. This nine-month portion is a pre-petition claim (if the September 30.1995 additional premium was prorated, the pre-petition amount would be $746,854.00); and

c. Prudential did not file a proof of claim for a general unsecured claim, and therefore Prudential is barred from seeking payment for this $746,854.00 portion of the additional premium.

Smith Corona thus concludes that only the difference between $995,805.00 and $746,-854.00, $248,95 1.00, should be allowed as an unpaid additional premium entitled to administrative expense priority. Prudential disagrees.

The information in the record related to this argument is as follows: An additional premium is due on the last day of each contract period. Docket no. 1603. ¶ 11. The additional premium is the sum of additional premiums for health, life, and disability coverage. The additional premium for the life and disability coverage is calculated as a percentage of the regular premium for that contract year. Contract at 39.[2] The additional premium for the health coverage is based upon a formula that accounts for, among other things, the average number of covered employees, and benefits paid out. Contract at 43–44; Transcript at 58.

Nothing in this record supports the assertion that a portion of the additional premium is payment for pre-petition employee insurance benefits. Furthermore, the court cannot agree with Smith Corona's implicit argument that the additional premium may be *uniformly* attributed to the prior year, which would be necessary for this court to prorate the additional premium due September 1995. The additional premium is a separate element of compensation that the parties agreed to and that benefits the estate. Thus, the facts here are materially, different from the various cases Smith Corona cited in its memorandum of law purporting to hold that additional premiums may be prorated.

For these reasons, Smith Corona's proration arguments are without merit. Prudential has met its burden that the September 30, 1995 additional premium is for post-petition insurance and thus is an expense of administration.

■ Even assuming Smith Corona could prevail on the proration arguments, Prudential argues that there is an alternative basis for the $995,805.00 September 1995 premium it claims. The Prudential contract was not assumed by Smith Corona. The plan rejected all executory contracts not expressly assumed. Third Amended Second Joint Plan, Docket no. 1114, Articles 1.64.7.2(a). Prudential argues that the contract is executory, and was deemed to have been rejected by Smith Corona upon confirmation, and that Prudential thus has a claim for rejection damages.

The issue underlying this alternative argument is whether the Prudential contract is executory.[3] A contract is executory if, at the time of the petition date, "the obligation of both the [debtor] and the other party to the contract are so far unperformed that the

---

2. A copy of the contract was attached to the joint stipulation of facts. Docket no. 1603, Exhibit A. Contract page citations refer to the page number at the bottom right hand corner.

3. This issue was fully argued in the papers and at the hearing.

failure of either to complete performance would constitute a material breach excusing performance of the other." *E.g., In re Columbia Gas System,* 50 F.3d 233.239 (3d Cir.1995) (citations omitted). Prudential points to the obligation of Smith Corona to pay monthly premiums, and its own obligation to provide continuing insurance coverage. Smith Corona does not dispute that these obligations satisfy the standards of the *Columbia Gas* case.

■ Smith Corona, however, argues that there is no executory contract for it to assume or reject. It argues that Smith Corona and Prudential have entered into a series of one year policies for each year since 1989, and that the contract that existed at the time of its Chapter 11 petition expired on September 30.1995. Prudential rejoins that there is one contract that has been renewed many times since 1989, and that is still in effect.

On these contract issues, Connecticut law governs. Smith Corona has cited *Phelan v. Everlith,* 1 Conn.Cir.Ct. 43, 22 Conn.Supp. 377, 173 A.2d 601 (1961) for the proposition that a renewal policy is a separate contract, independent of the original policy, requiring its own elements of offer and acceptance. In that case, however, the contract at issue expired by its own terms at the end of one year. Here, in contrast, the contract continues indefinitely unless one of the parties terminates the contract. The *Phelan* case is inapposite.

In the absence of controlling law, both parties agree that the court should examine the language of the contract. *E.g., Cox v. Peerless Ins. Co.,* 774 F.Supp. 83, 86 (D.Conn.1991). Smith Corona argues that the contract allows Prudential to re-rate the premiums every year, that Smith Corona has the opportunity to accept or reject the new premiums, and when it accepts the new premiums each year, this acceptance creates a new contract. As Prudential pointed out at oral argument, however, these changes in premiums do not have to occur at the anniversary date. For example, in the Fall of 1995, Prudential did not finally determine the re-rated premiums until about November 30, 1995, two months after the so-called offer and acceptance process would have been completed according to Smith Corona. Thus, there is no annual offer and acceptance process. This aspect of the contract supports Prudential, and not Smith Corona.

The remainder of the provisions of the contract also support Prudential on the executory contract issue. For example, the contract states it remains in effect for so long as Smith Corona continues to make its regular premium payments. The contract refers to "contract anniversaries" of "October 1 of each year, beginning in 1990." Contract at page 2. The schedule of plan benefits in later years all refer back to contract GW–21671. The amendments refer back to contract GW–21671. The incontestability section states that "There will be no contest of the validity of the Group Contract, except for not paying premiums, *after* it has been in force for one year." Contract at page 26 (emphasis added). These provisions would make no sense if there were a series of one year contracts between the parties.

Smith Corona also argues that Prudential's right to terminate the contract each anniversary date upon 31 days notice makes the contract of one year duration. The court would be very surprised if Prudential did not have some ability to terminate the contract. This argument fails in light of the other provisions of the contract. The contract was formed in 1989, is of long term duration, with the ability to change certain rates on a periodic basis.

At the time of the Chapter 11 petitions, there remained unperformed contract obligations of both Smith Corona and Prudential such that the failure of either to complete performance would constitute a material breach and excuse the performance of the other. The contract is executory.

### B. *The Dividend Issue*

■ Addressing now the dividend issue, the contract provides that Smith Corona may be entitled to a dividend each year. The dividend, if any, is the share of Prudential's divisible surplus allocable to Smith Corona's group contract. The dividend formula considers several factors, including certain defi-

cits from prior contract periods.[4] Prudential determines the amount of the dividend about the time of each anniversary date. The dividend is credited to Smith Corona as of the contract anniversary. *See generally* Contract at 1, 24.

For the policy year 1995, without consideration of deficits, Prudential determined Smith Corona's dividend to be $845,407.00. However, there was a deficit of $379,949.00 allocable to group insurance contract no. GW–21671 as of the October 1, 1994 anniversary date. Prudential subtracted this amount from the dividend credit, to arrive at a dividend credit of $465,458.00. See generally docket no. 1603 at 7–8.

Smith Corona argues as a matter of bankruptcy law that the October 1994 deficit cannot be deducted from the dividend because it is an attempt by Prudential to impermissibly recoup the deficit. Specifically, Smith Corona posits that:

1. The deficit is a pre-petition claim,

2. The dividend arose post-petition: and

3. These claims do not arise out a single transaction as required.

*In re University Medical Center,* 973 F.2d 1065, 1079–81 (3d Cir.1992) (stating standard for equitable recoupment).

In considering this argument, the court need only examine the first prong of Smith Corona's argument. The deficit is not a claim. A claim is a right to payment. 11 U.S.C. § 101(5). Prudential conceded, and Smith Corona did not dispute, that Prudential has no right to payment for the deficit. It is an accounting entry that is utilized for the purposes of calculating a future dividend owed to Smith Corona. Therefore, the analysis of recoupment law offered by Smith Corona is inapplicable. *Cf. In re Gross Plumbing & Heating Co., Inc.,* 146 B.R. 914 (Bankr.W.D.N.Y.1992) (principles of setoff not applicable to Insurance Fund's act of applying pre-petition dividend to pre-petition debt, where dividend not earned unless insured has overpaid).

Prudential may apply the deficit of $379,949.00 in computing the amount of a dividend owed to Smith Corona. Thus, Smith Corona's 1995 dividend is $465,458.00. This amount will be subtracted from the allowed additional premium due September 30, 1995 ($995,805.00).

C.   The Interest Issues

The last disputed amount is the $116,310.00 claimed in interest on the 1995 unpaid additional premium. The contract provides that interest accrues on all unpaid premiums at the end of the applicable grace period, which for this premium is October 30, 1995. It is not disputed that as a mathematical matter, interest from this date through the date of filing of Prudential's proof of claim equals $116,310.00. Smith Corona offers no reasons in addition to those already discussed as to why Prudential is not entitled to this interest. The $116,310.00 amount will be allowed.

The last portion of Prudential's claim is the 1996 additional premium. Smith Corona does not dispute that it owes the claimed $152,212.00 amount. This amount will be allowed.

III.   *Conclusion*

Prudential has shown by a preponderance of the evidence that:

1. It is entitled to a 1995 additional premium of $995,805.00, and interest on this premium of $116,310.00.

2. It is entitled to a 1996 additional premium of $152,212.00.

3. With respect to the 1995 additional premium, Smith Corona is entitled to a dividend credit of $465,458.00.

Adding these allowed claimed amounts, and subtracting the dividend credit results in an ALLOWED administrative claim for Prudential of $798,869.00.

An order in accordance with this letter opinion is attached.

---

4.   Mr. Roy explained some of the other factors as follows: "Statutory dividend requirements are changed at any point in time and that goes into the calculation [of the dividend]. The number of employees hired, the number of employees fired, the experience during the course of the contract. All of that goes into the calculation of the dividend." Transcript at 30.

## ORDER

In accordance with letter opinion dated June 18, 1997, judgment is entered in favor of Prudential Insurance Company of America as follows:

| | | |
|---|---|---|
| 1995 Additional Premium | $995,805.00 | |
| Interest on 1995 Premium | 116,310.00 | |
| | | $1,112,115.00 |
| 1996 Additional Premium | | 152,212.00 |
| | | $1,264.327.00 |
| Minus Dividend Credit Due Smith Corona on 1995 Additional Premium | | 465,458.00 |
| | | $ 798,869.00 |