**In re UNIDIGITAL, INC.,
et al., Debtors.**

**Nos. 00–3806 MFW to 00–3811 MFW.**

United States Bankruptcy Court,
D. Delaware.

May 7, 2001.

Neil B. Glassman, Charlene D. Davis, Christopher A. Ward, The Bayard Firm, Wilmington, DE, for debtors.

David B. Stratton, Pepper Hamilton, LLP, Wilmington, DE, for S.N.Y., Inc.

Madlyn Gleich Primoff, David Fleischer, Stephen A. Weisbrod, Paul Hastings Janofsky & Walker, LLP, New York City, for S.N.Y., Inc.

Montague S. Claybrook, Parente Randolph, Wilmington, DE, Chapter 7 Trustee.

## OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

This matter is before the Court on the Debtors' Motion for an Order Authorizing Abandonment of Substantially All of the Remaining Equipment of the Debtors Located on the 10th Floor of 229 West 28th Street and the objection of the landlord, S.N.Y., Inc. ("SNY"). We conclude that the Debtors may abandon their property pursuant to section 554(a) of the Bankruptcy Code and that SNY is not entitled to an administrative claim for the removal of that equipment.

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

## I. BACKGROUND

The Debtors are media service companies which provide, among other things, printing services. Prior to the petition date, one of the Debtors, Unison (N.Y.), Inc., entered into a lease of two floors of nonresidential real estate from SNY. As of the petition date, the Debtors were no longer conducting operations at that location. After filing, the Debtors endeavored to market the leases and sell the equipment on the premises. The Debtors were able to sell most of their equipment but were unable to sell one large piece, a Champion printer.

The Champion printer is over twenty-five feet long and weighs over 30,000 pounds. Removal from the premises requires dismantling the machine and removing it through the windows by crane. Removal also requires employing a licensed plumber to disconnect the water and drain the development chemicals and employing a licensed electrician to disconnect the high-power electrical cables from beneath the floor. Finally, removal of the equipment requires disposal of the chemicals used in the printing process, which are located in cabinets and canisters at the site. There is evidence of possible seepage.[2]

The Debtors filed a motion to abandon the printer and related chemicals. SNY objected to the Debtors' motion. In its objection, SNY asserts that it is entitled to an administrative claim for any cost related to removing the equipment and chemicals and cleaning the premises.

---

2. SNY's witness, a partner in SNY, testified that there "seems to be some seepage" of nitrogen from the sides of the processor, leading him to believe that the processors were not fully drained. *See* Transcript, p. 31.

After presenting testimony and oral arguments, the parties submitted post-trial briefs.[3]

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M) and (O).

## III. DISCUSSION

The Debtors assert that they may abandon the property pursuant to section 554(a) of the Bankruptcy Code which provides that "after notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." The Debtors assert that the property has no value to the estate and represents a liability because of the cost of removal (and rent until the removal is accomplished). Therefore, they assert, their decision to abandon the equipment is a reasonable business judgment. No party has contested the Debtors' assertion that the equipment has little value to the estate.

SNY objects to the Debtors' motion on two bases: First, it asserts that the proposed abandonment falls within the *Midlantic* exception to abandonment. Second, SNY asserts that it is entitled to an administrative claim under section 503(b) for its costs of removing the equipment and cleaning the premises.

### A. The Midlantic Exception

■ Though section 554(a) permits a debtor to abandon property which is burdensome to the estate, in *Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), the Supreme Court

recognized a limit on this right where there is a threat to the public health.

In *Midlantic*, the debtor was a processor of waste oil. After the debtor filed for bankruptcy, an investigation revealed that the debtor had over 70,000 gallons of toxic waste leaking into the ground at one of its facilities. The mortgage and reclamation costs exceeded the value of the property, and the debtor, consequently, sought to abandon the property. The bankruptcy court granted the debtor's motion over the objection of the city and state. The government subsequently decontaminated the property at a cost of approximately $2.5 million. On appeal, the Supreme Court found that the Bankruptcy Code does not permit debtors to abandon property in contravention of state or local laws designed to protect public health or safety. 474 U.S. at 502, 106 S.Ct. 755. In a footnote, the Court expressly stated that the exception to the abandonment power is "a narrow one" which "is not to be fettered by laws or regulations not reasonably calculated to protect the public health or safety from imminent and identifiable harm." *Id.* at 507 n. 9, 106 S.Ct. 755.

■ Since the *Midlantic* decision, the majority of courts have read the exception to abandonment narrowly by disallowing abandonment only where there is an imminent and identifiable harm to the public health or safety. *See, e.g., Borden, Inc. v. Wells–Fargo Bus. Credit (In re Smith–Douglass, Inc.)*, 856 F.2d 12, 15 (4th Cir. 1988); *Commonwealth Oil Ref. Co., Inc. v. United States Envtl. Prot. Agency (In re Commonwealth Oil Ref. Co., Inc.)*, 805 F.2d 1175, 1185 (5th Cir.1986); *New Jersey Dept. of Envtl. Protection v. Atkinson (In re St. Lawrence Corp.)*, 248 B.R. 734, 739 (D.N.J.2000); *In re FCX, Inc.*, 96 B.R. 49, 54 (Bankr.E.D.N.C.1989); *In re Purco,*

---

**3.** After the motion was taken under advisement, the case converted to chapter 7.

*Inc.*, 76 B.R. 523, 533 (Bankr.W.D.Pa. 1987); *In re Franklin Signal Corp.*, 65 B.R. 268, 271–72 (Bankr.D.Minn.1986). *Cf. In re Wall Tube & Metal Prods. Co.*, 831 F.2d 118 (6th Cir.1987); *In re Stevens*, 68 B.R. 774, 782, n. 7 (D.Me.1987); *In re Microfab, Inc.*, 105 B.R. 161, 169 (Bankr. D.Mass.1989); *In re Peerless Plating Co.*, 70 B.R. 943, 946–47 & n. 1 (Bankr. W.D.Mich.1987). Further, in order to fit into the *Midlantic* exception, the debtor must be attempting to abandon property in contravention of state or local laws or regulations designed to protect the public. *Midlantic*, 474 U.S. at 507, 106 S.Ct. 755.

▮ In this case, SNY asserts that the Debtors have violated New York environmental conservation law. *See* N.Y.Envtl.Conserv. §§ 27–0900 *et seq.* However, no regulatory authority has made any specific finding that the Debtors are in violation of that statute. SNY has not specified any particular provision of New York law which the Debtors have violated or introduced any evidence that the chemicals involved are contained on the RCRA list of hazardous materials, as required by the New York statute. *See* New York Envtl.Conserv.Law § 27–0903. Consequently, we find SNY's bare assertion to be insufficient.

One case from this circuit, *In re Mahoney–Troast Constr. Corp.*, 189 B.R. 57 (Bankr.D.N.J.1995), is instructive. In *Mahoney–Troast*, a landlord of the debtor sought an administrative claim for reimbursement of remediation costs associated with two underground storage tanks and surrounding contaminated soil. 189 B.R. at 58–59. After regaining possession of the premises, the landlord conducted its own environmental investigation of the property and decided to remove the two tanks and 220 tons of the soil. *Id.* at 59. The landlord claimed that the work was necessary to comply with state law although it did not specify which laws required the remediation or how the remediation brought the land into compliance.

The Court rejected the landlord's claim for an administrative expense. The Court concluded that, under *Midlantic*, "expense incurred post-petition to clean up continuing environmental hazards created pre-petition may be granted administrative expenses priority." *Id.* at 61. However, in *Mahoney–Troast*, the Court found nothing in the record before it which indicated an imminent harm to the public health. *Id.* Additionally, the Court found that, unlike other cases involving environmental hazards, the landlord's actions were voluntary and not pursuant to an order from a regulatory authority. Nor did the landlord cite a specific statute which compelled its action.

The facts of this case are similar. SNY has proven only that the machine is still wired and connected to plumbing and will therefore require professional disassembly, and that the Debtors have left canisters of chemicals on the premises which will have to be removed. Additionally, SNY introduced evidence that the Debtors' equipment contains a processor which may still hold chemicals.

Even if true, none of these facts establish an imminent harm to the public health. First, there is no evidence that the chemicals are hazardous as they are currently stored. Second, any danger from disassembling the equipment can be avoided by employing professional contractors. Third, the Debtors rejected the lease, effective January 31, 2001, and the chemicals have remained on site since then. If the danger were truly imminent, SNY would have protected its property by eliminating the danger.

Consequently, we conclude that SNY has not met the standard articulated by

*Midlantic* and its progeny to deny the Debtors' abandonment request or to afford an administrative expense for the cleanup costs.

### B. *Administrative Claim*

Even if the Debtors are not obligated to dispose of the printer and chemicals under the *Midlantic* authority, SNY still insists that it is entitled to an administrative claim for the cost of removal.

■ Priority claims affect two important bankruptcy concerns: minimizing administrative costs during Chapter 11 to preserve the debtor's scarce resources and thus encourage rehabilitation, *General Am. Transp. Corp. v. Martin (Mid Region Petroleum, Inc.)*, 1 F.3d at 1130, 1132 (10th Cir.1993), and obtaining maximum and equitable distribution of estate assets to creditors. *See, e.g., BFP v. Resolution Trust Corp.*, 511 U.S. 531, 563, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). Therefore, priority claims are narrowly construed. *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865 (4th Cir.1994). Claimants who seek payment ahead of other unsecured claims bear the burden of establishing that their claim qualifies for priority status. *See, e.g., Ford Motor Credit Co. v. Dobbins*, 35 F.3d at 865; *Mid Region Petroleum, Inc.*, 1 F.3d at 1132; *In re Hemingway Transp., Inc.*, 954 F.2d 1, 5 (1st Cir. 1992); *In re Columbia Gas Syst., Inc.*, 224 B.R. 540, 549 (Bankr.D.Del.1998); *In re Smith Corona Corp.*, 210 B.R. 243, 245 (Bankr.D.Del.1997).

■ Determining whether a creditor has an administrative claim is a two-prong test: the expense must have arisen from a post-petition transaction between the creditor and the debtor, and the transaction must have been "actual and necessary" to preserve the estate. *See, e.g., Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir.

1995); *General Am. Transp. Corp. v. Martin*, 1 F.3d at 1133; *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir.1984); *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976); *In re Mid–American Waste*, 228 B.R. 816, 821 (Bankr.D.Del.1999); *In re Molnar Bros.*, 200 B.R. 555, 559 & n. 3 (Bankr.D.N.J.1996); *In re Chateaugay Corp.*, 102 B.R. 335, 353 (Bankr.S.D.N.Y. 1989).

■ In this case, the only transaction between the parties is the lease, which the Debtors seek to reject. The rejection of that lease creates a pre-petition breach by operation of section 502(g), which provides:

A claim arising from the rejection, under 365 of this title ... of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed ... or disallowed ... the same as if such claim had arisen before the date of the filing of the petition.

Accordingly, all claims associated with the rejection of the lease are deemed prepetition claims.

Second, SNY is unable to prove that removing the equipment or cleaning the property will confer any substantial benefit on the Debtors or the Debtors' estate. In *In re Allen Care Ctrs., Inc.*, the Court held that the costs of closing operations are not administrative priority claims. 163 B.R. 180 (Bankr.D.Or.1994). In *Allen Care*, the bankruptcy court granted the debtor's motion to abandon a nursing home facility. The state subsequently arranged for the transfer of the facility's patients and closed the facility. The state sought an administrative claim for the costs of doing so, asserting that those post-petition expenses were required by state statutes and regulations to protect the public health. The Chapter 7 trustee objected.

The Court concluded that to be an administrative claim, "it is not enough to simply assert that the expense was incurred postpetition with regard to estate property to protect public health and welfare." 163 B.R. at 186. To do so, the Court held, would read the words "necessary" and "preserving the estate" out of the statute. The *Allen Care* Court found that the estate did not benefit from closing the facility or moving the patients. While the facility residents may have benefitted from those services, the Court held that it was not enough to justify allowing a priority claim.

We concur with the decision in *Allen Care*. While it may seem inequitable to "saddle" SNY with the cost of cleaning up the Debtors' mess, absent a benefit to the estate, no priority claim is allowable. Like the services rendered in *Allen Care*, the cost of cleaning the landlord's premises does not benefit the estate here. Rather, it only benefits SNY.

SNY asserts that denying it an administrative claim for its costs would be inequitable because disallowing its claim would run contrary to one of the prime bankruptcy policies: equitably distributing estate assets among creditors. Specifically, SNY asserts that no single creditor should bear all of the costs incurred as a result of the Debtors' abandonment; rather, the burden should be shared by the Debtors and the secured lender, whom SNY asserts has received the benefit of these cases.

SNY misconstrues the point of section 507, which provides the order by which unsecured claims are paid from the assets of the estate. Under that scheme, administrative expenses (as defined in section 503(b)) are given first priority. Therefore, SNY's attempt to receive payment of its removal costs as an administrative expense is not an attempt to be paid on an equal basis with other creditors but ahead of them. Neither the language nor the spirit of the Bankruptcy Code support SNY's administrative claim.

Accordingly, we conclude that SNY is not entitled to an administrative claim for its clean-up costs.

### C. Post-petition Tort

SNY also asserts that its claim should be given administrative status because the Debtors' actions constitute a post-petition tort under New York law. Specifically, SNY asserts that, by leaving the equipment on the premises, the Debtors have run afoul of New York's law on trespass and private nuisance.

 Under New York law, the elements of trespass are the intentional entry by a party onto another's land and the wrongful use without justification or consent. *See, e.g., Chlystun v. Kent,* 185 A.D.2d 525, 526, 586 N.Y.S.2d 410 (N.Y.App.Div.1992); *Granchelli v. Johnson Bldg. Co.,* 85 A.D.2d 891, 446 N.Y.S.2d 755, 756 (N.Y.App.Div.1982). Under New York law, the elements of private nuisance are an intentional, substantial, and unreasonable interference with another's right to use real property. *See, e.g., Copart Indus. v. Consol. Edison Co. of New York,* 41 N.Y.2d 564, 570, 394 N.Y.S.2d 169, 362 N.E.2d 968 (N.Y.1977); *Jennings v. Fisher,* 258 A.D.2d 722, 723, 684 N.Y.S.2d 680 (N.Y.App.Div.1999).

SNY asserts that, by leaving objects on SNY's real property, the Debtors have interfered with SNY's ability to enjoy the premises, thereby committing the torts of trespass and private nuisance. Further, SNY argues that because the Debtors' actions occurred post-petition, SNY is entitled to an administrative claim under the authority of *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968).

In *Reading Co.*, a receiver had been appointed to continue the debtor's business: leasing its sole remaining significant asset, a parcel of real estate. While still in Chapter XI, a fire destroyed the debtor's building and spread to adjacent property. The owner of the neighboring property sought an administrative claim for its damages. Over the trustee's objection, the Court allowed the claim as an administrative expense, reasoning that because the receiver was operating the property post-petition for the benefit of the debtor's unsecured creditors, the unsecured creditors should bear the burden associated with the post-petition operations. *Id.* at 479–80, 88 S.Ct. 1759.

*Reading Co.* is distinguishable from this case. In this case, the tort, if in fact there was one,[4] did not arise from the operation of the Debtors' business. The Debtors ceased operations at SNY's premises prior to the bankruptcy filing. The alleged tort, therefore, was not committed during the conduct of business which benefitted the estate and other creditors.

We conclude that the Debtors' abandonment of the equipment did not benefit the estate and was not necessary to preserve the estate. Therefore, SNY's claim is not entitled to administrative priority status.

V. *CONCLUSION*

For the reasons set forth above, we grant the Debtors' motion over the objection of SNY. An appropriate order is attached.

### ORDER

AND NOW, this **7TH** day of **MAY, 2001,** upon consideration of the Debtors' Motion for an Order Authorizing Abandonment of Substantially All of the Remaining Equipment of the Debtors Located on the 10th Floor of 229 West 28th Street, and the Objection of SNY, it is hereby

**ORDERED** that the Objection of SNY is **OVERRULED;** and it is further

**ORDERED** that the Debtors' Motion is **GRANTED.**

---

**4.** Because it is not necessary to our ruling, we do not decide whether the Debtors' actions constitute a tort under New York law.