**In re INSILCO TECHNOLOGIES, INC., et al., Debtors.**

**No. 02–13672(KJC).**

United States Bankruptcy Court, D. Delaware.

April 8, 2004.

David L. Buchbinder, Office of U.S. Trustee, Wilmington, DE, U.S. Trustee.

Schuyler G. Carroll, Arent, Fox, Kintner, Plotkin & Kahn, New York City, for pro se.

Andrew I. Silfen, Arent Fox, PLLC, New York City, David P. Primack, Michael George Phillips, Warren T. Pratt, Drinker, Biddle & Reath, LLP, Wilmington, DE, for Official Committee of Unsecured Creditors.

## MEMORANDUM [1]

KEVIN J. CAREY, Bankruptcy Judge.

Insilco Technologies, Inc. and its affiliated debtors, as debtors and debtors in possession in the above-captioned matter (collectively "the Debtors"), filed their Third Omnibus Substantive Objection to Requests for Payment of Administrative Expenses ("the Objection"). The Debtors assert in their memorandum of law in support of the Objection that the claims of New York State Department of Environmental Conservation ("NYDEC") are pre-petition claims and should therefore be reclassified as general unsecured claims.[2] NYDEC and SUSA Mt. Vernon LLC ("SUSA") filed responses in opposition to the Objection. Bank One, as agent, and the Official Committee of Unsecured Creditors filed a supplemental memorandum of law in support of the Objection. A

Alfred Villoch, III, Maureen D. Luke, Pauline K. Morgan, Sharon M. Zieg, Young, Conway, Stargatt & Taylor, LLP, Wilmington, DE, Jack R. Pigman, Porter, Wright, Morris & Arthur, PLL, Columbus, OH, Warren T. Pratt, Drinker, Biddle & Reath, LLP, Wilmington, DE, for Debtor.

---

1. This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(B).

2. Originally, the Objection had called for the claims to be disallowed and expunged. NYDEC's two claims are comprised of a $1,981 claim for boom maintenance remediation work performed in June 2003, and a $4,043,268 claim for future investigation and environmental remediation work (claim # A96). SUSA filed a surrogate request for payment of an administrative claim on behalf of NYDEC (claim # A98). At hearing, counsel for NYDEC stated that an additional sum of approximately $4,000 had been spent in boom maintenance, but no evidence of this was submitted. Nov. 24, 2003 Tr. at 37–38. The parties agreed that "only the priority of the claims will be argued and not the amount which will be saved for another day." Tr. at p. 3.

hearing was held on November 24, 2003 to consider the Objection to the claims. For the reasons which follow, the Objection will be sustained.

## FACTS

In 1971, Insilco Technologies purchased Red Devil Paints & Chemicals, Inc. ("Red Devil"), a company involved in manufacturing paint products. Red Devil conducted its manufacturing operations at 30 North West Street, Mount Vernon, New York ("the Property"), which is located near the Bronx River. In 1985, Insilco Technologies purchased the Property from the City of Mount Vernon Industrial Development Agency. In 1989, Insilco Technologies sold the assets of Red Devil to a third-party but continued to use the Property until mid–1990, when it ceased paint manufacturing operations. In April 1998, Insilco Technologies sold the Property to SUSA.

In the years prior to their bankruptcy filing, Insilco Technologies undertook efforts to investigate and remediate the environmental contamination at the Property.[3] This was done, in part, at the direction of NYDEC, which issued an administrative consent order in June 1993 requiring Insilco Technologies to implement an environmental study to determine the nature and extent of the contamination at the Property.[4] During the course of this study, Insilco Technologies agreed to perform two interim remedial measures to address on and off site recovery of contaminants seeping into the Bronx River.

Based on the findings of the environmental study, NYDEC decided to address remediation of the contamination at the Property in two "operable units". One unit was designed to address the on and off site recovery of liquid non-aqueous phase liquids ("LNAPL")[5] seeping into the Bronx River. The second unit was designed to address the on and off site recovery of residual groundwater and soil contamination after LNAPL's were recovered. In March 1996, NYDEC issued a Record of Decision outlining the remediation efforts that Insilco Technologies needed to perform for the recovery of LNAPLs, including, among other things, recovery of LNAPL from the groundwater, recovery of paint materials from the Bronx River, the maintenance of facility pavement and foundations, and an investigation into the recovery of off site LNAPLs. Thereafter, in March 1997, Insilco Technologies entered into another consent order with NYDEC to develop and implement a remedial program for the recovery of LNAPLs.[6]

In December 2002, the Debtors sought chapter 11 relief due to a downturn in the telecommunications market. Insilco Technologies continued with its remediation efforts and obligations until March 2003, when it ceased doing so because it no longer had the resources to continue. Since such time, NYDEC has periodically inspected the boom collection system at the Property and contracted for its maintenance in order to prevent contaminants from flowing into the Bronx River nearby. According to NYDEC, the contamination

---

3. In 1992, Insilco Technologies conducted a Preliminary Site Investigation which included soil and groundwater sampling and the removal of some contaminated soil.

4. This included, among other things, air, soil and groundwater sampling and installing additional monitoring wells.

5. LNAPL are liquids that are lighter than water and do not dissolve in water.

6. The 1993 and 1997 consent orders will be collectively referred to as "the Consent Orders".

at the Property is an ongoing hazard and a threat to the public's health and welfare.

At this point, the Debtors are in the process of winding down their operations and selling their remaining assets.[7] On February 13, 2004, this Court approved the Debtor's Amended Disclosure Statement (Docket No. 1022). Hearing on confirmation of the Plan is scheduled for April 28, 2004.

## DISCUSSION

■ The question presented is whether the costs to be incurred by a state environmental agency to cleanup an ongoing environmental hazard on real property once owned and occupied by these Debtors should be granted administrative expense priority.

### Administrative Expenses

■ 11 U.S.C. § 503(b)(1)(A) provides, in relevant part, that:

After notice and a hearing, there shall be allowed administrative expenses ... including the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

Administrative expenses are given priority status and paid ahead of other unsecured claims. *See* 11 U.S.C. § 507. An administrative expense claimant bears the burden

of establishing that its claim qualifies for priority status. *In re Unidigital, Inc.,* 262 B.R. 283, 288 (Bankr.D.Del.2001). This requires the claimant to establish that its: (1) expense arose from a post-petition transaction between with the debtor and (2) that the transaction accorded the estate an actual benefit. *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.),* 181 F.3d 527, 532–533 (3d Cir.1999); *In re Unidigital, Inc.,* 262 B.R. at 288.[8]

### A. The Property was never property of the estate; nor is there benefit to the estate

■ In general, only those costs incurred to cleanup property for which an estate has an interest in or owns may qualify as administrative expenses. NYDEC and SUSA argue that NYDEC's claims are entitled to administrative expense treatment because the Debtors are prohibited from abandoning the Property in contravention of their obligations to remediate the Property and the laws designed to protect the public. To this end, NYDEC and SUSA rely upon *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) and its progeny, which hold that property of an estate may not be abandoned if the abandonment will act to contravene laws designed to protect public health and safety and will pose an imminent threat to the public's welfare.[9] *See*

7. Following hearing on March 7, 2003, the Court entered orders on March 10, 2003 approving a series of agreements permitting the Debtors to sell substantially all of their assets. The Debtors report in their Amended Disclosure Statement that, as of March 28, 2003, the Debtors had closed each of the five sales transactions.

8. It is not disputed by the parties that the only amount which may have been *actually expended* by NYDEC was the $1,981 allegedly spent for boom maintenance and remediation

work performed in June 2003. Arguably, this alone could be a sufficient ground upon which to deny administrative expense status to the $4,043,268 portion of the claim for *future* investigation and *future* remediation work. *O'Brien,* 181 F.3d at 532; *Unidigital,* 262 B.R. at 288.

9. This rationale is based, in part, upon the duty of a trustee or debtor in possession under 28 U.S.C. § 959(b) to manage property in their possession in accordance with state

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection,* 474 U.S. at 507, 106 S.Ct. 755; *Commonwealth of Pennsylvania Dep't of Envtl. Res. v. Conroy,* 24 F.3d 568, 569 (3d Cir.1994); *In re Chateaugay Corp.,* 944 F.2d 997, 1010 (2d Cir.1991); *Lancaster v. State of Tennessee (In re Wall Tube & Metal Prods. Co.),* 831 F.2d 118, 121–122 (6th Cir.1987); *In re Unidigital, Inc.,* 262 B.R. at 286–287. When abandonment is prohibited, the debtor is required to retain the property and maintain it in accordance with the law where the property is located. *See Conroy,* 24 F.3d at 569; *In re Wall Tube & Metal Prods. Co.,* 831 F.2d at 121–122; *see also* 28 U.S.C. § 959(b). As such, courts have found that when a debtor cannot abandon property, the costs incurred by a state agency to remediate it will be accorded administrative expense treatment because the expenses incurred to remove the threat are necessary to preserve the estate. *Conroy,* 24 F.3d at 570; *In re Chateaugay Corp.,* 944 F.2d at 1009–1010; *In re Wall Tube & Metal Prods. Co.,* 831 F.2d at 123.[10]

The Property here was sold by the Debtors to SUSA in April 1998, almost four years before their bankruptcy filing in December 2002. The Debtors did not occupy or use the Property after the sale. The Property was never part of the "estate", circumscribed by Bankruptcy Code § 541. Neither are the Debtors violating the proscriptions of 28 U.S.C. § 959(b), since the Property is not now, nor was it "in their possession" at the time of the commencement of their chapter 11 proceedings. As such, the costs that NYDEC incurs in remediating the contamination at the Property will not benefit the estate. NYDEC's claims are not entitled to administrative expense treatment. *See, e.g., In re Mahoney–Troast Constr. Co.,* 189 B.R. 57, 61–62 (Bankr.D.N.J.1995) (holding that environmental cleanup costs were not entitled to administrative expenses treatment because, among other reasons, the property was not owned or utilized by the debtor).

The cases relied upon by NYDEC and SUSA are inapposite to the present situation since those cases involved property that was part of a debtor's estate. *See, e.g., Conroy,* 24 F.3d at 570 (costs incurred to clean up the debtor's property were administrative expenses); *In re Chateaugay Corp.,* 944 F.2d at 1009 (clean up costs for property owned by debtors accorded administrative expense priority); *In re Wall Tube & Metal Prods. Co.,* 831 F.2d at 120 (administrative expense treatment applied to clean up costs for storage drums that remained within the debtor's estate); *Estate of Irvin Schwartz v. Jones Transfer Co. (In re Jones Transfer Co.),* No. 95–CV–75613–DT, 1996 U.S. Dist. LEXIS 10954, at *5–6 (E.D. Mich. June 18, 1996) (only costs incurred to clean up property owned by the estate may qualify as administrative expenses); *see also* 4 Collier on Bankruptcy ¶ 503.06[4][a][i] (15th ed. Revised) (noting that if a debtor currently

---

laws. 28 U.S.C. § 959(b) provides, in relevant part, that:

> a trustee ... appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

10. NYDEC asserts that the Debtor has conceded that the contamination at the Property imposes a risk to the public's health and safety. Even if true, because I conclude that the Debtor is not abandoning the Property (either by virtue of 11 U.S.C. § 554 or in violation of 28 U.S.C. § 959(b)), the *Midlantic* exception is not implicated.

owns property, the costs associated with cleanup, which are assessed during the case, are afforded administrative priority).

■ Furthermore, neither NYDEC nor SUSA have demonstrated how the environmental remediation of the Property will actually confer a benefit to the Debtors' estate. Any cleanup will not preserve any estate assets or provide a benefit to the estate (e.g., increase in property value), since the Property is not part of the estate. Absent a benefit to the estate, an administrative claim cannot be allowed. *See In re Unidigital, Inc.,* 262 B.R. at 289.

### B. Obligations to comply with environmental laws alone do not qualify as a claim for reimbursement of clean up costs as an administrative expense

■ NYDEC's and SUSA further argue that the claims should be given administrative priority even if the Debtors do not own the Property, because the Debtors have an ongoing obligation to comply with the Consent Orders and state law. In this regard, NYDEC and SUSA rely on *Torwico Elec., Inc. v. State of New Jersey, Dep't of Envtl. Protection (In re Torwico Elec., Inc.),* 8 F.3d 146 (3d Cir.1993), which held that a state agency's attempt to enforce an order it issued directing the debtor to cleanup up contamination which posed an ongoing hazard is not a "claim" within the meaning of the Bankruptcy Code and, therefore, not subject to discharge. *Id.* at 151. There, the Court held that, although the debtor's environmental obligations under New Jersey law did not "run with the land," those obligations did "run with the waste;" therefore, the debtor could not seek to discharge them and avoid cleaning up the property despite the fact that the debtor no longer owned it. *Id.; see also In re Chateaugay Corp.,* 944 F.2d at 1008 (noting that if the EPA sought to enforce

an order requiring the debtor to take action to remediate current pollution, such an order is not a claim subject to discharge).

NYDEC's and SUSA's reliance on *Torwico,* in support of their position, is misplaced. In *Torwico,* unlike here, the state agency did not seek monetary damages from the debtor for cleanup costs. Rather, the state sought only to compel the debtor to do cleanup work pursuant to an order it issued. *Torwico* does not stand for the proposition that clean up costs incurred on behalf of an out of possession debtor will be afforded administrative priority treatment because the debtor has continuing obligations to comply with environmental laws. Rather, *Torwico* addressed whether a debtor's duty to comply with environmental laws was dischargeable, not the priority of expenses.

Here, NYDEC seeks only reimbursement for the largely future costs of remediating the Property. While the Debtors may not be able to discharge any duty to comply with the Consent Orders, this does not elevate NYDEC's claim for costs into an administrative expense, especially when the Property is not part of the estate. NYDEC's claims are subject to discharge, since they seek only a monetary reimbursement. See, *Ohio v. Kovacs,* 469 U.S. 274, 281, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985); *In re Chateaugay Corp.,* 944 F.2d at 1009.

### CONCLUSION

For the reasons set forth above, NYDEC's claims for future environmental cleanup costs at the Property will not be classified as administrative expenses. Instead, the claims will be classified as general unsecured claims. *In re McCrory Corp.,* 188 B.R., 763, 765 (Bankr.S.D.N.Y.1995)(noting that claims for reimbursement of amounts expended

on environmental cleanup from pre-petition activities are ordinarily deemed general unsecured claims).[11]

### ORDER

AND NOW, this 8th day of April, 2004, upon consideration of the Third Omnibus Substantive Objection to Requests for Payment of Administrative Expenses ("the Objection") filed by Insilco Technologies, Inc. and its affiliated debtors, as debtors and debtors in possession, (collectively "the Debtors") and their memorandum of law in support thereof, the responses of New York State Department of Environmental Conservation ("NYDEC") and SUSA Mt. Vernon LLC in opposition thereto, and the supplemental memorandum of law of Bank One, as agent, and the Official Committee of Unsecured Creditors in support thereof, and after a hearing on the matter, and for the reasons set forth in the foregoing Memorandum, it is hereby **ORDERED** and **DECREED** that:

(1) The Objection is **SUSTAINED;** Claim Nos. A96 and A98 ("Claims") are classified as general unsecured claims; and

(2) If not agreed by the parties, the amount of the Claims will be determined at an evidentiary hearing, to

11. Bank One, as agent (the prepetition secured lender), and the Official Committee of Unsecured Creditors have joined in the Debtor's Objection (Docket No. 930), and argue that this result is also warranted from a practical viewpoint: even if administrative expense priority is awarded, "it will not result in a materially greater recovery than if the Claim is treated as a general unsecured claim." Joinder, at p. 8.

In June, 2003, the Court entered an order (Docket No. 721) approving a settlement agreement (after notice to creditors, including NYDEC) among the major constituents of this chapter 11 proceeding, which agreement

be scheduled at the request of the Debtor or NYDEC.

served as the precursor to a consensual chapter 11 plan. In its essence, the settlement agreement reallocated a portion of the secured lenders' collateral for the benefit of unsecured claims and administrative expenses. Failing such an agreement, there would be no funds available to pay the necessary administrative expenses; hence, there could be no confirmable plan and a conversion of this case to a chapter 7 liquidation would likely follow. The amount of the secured claims would so far exceed the value of the Debtor's remaining assets, that no recovery would be available to any other constituency.