**In re GOODY'S FAMILY CLOTHING, INC., et al., Debtors.**

No. 08–11133 (CSS).

United States Bankruptcy Court, D. Delaware.

Feb. 6, 2009.

Gregg M. Galardi, Marion M. Quirk (Argued), Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmington, DE, for Debtors and Debtors in Possession.

Michael E. Goddard (Argued), Added Value Services, Inc., Decatur, TN, President of Added Value Services.

## *OPINION*[1]

CHRISTOPHER S. SONTCHI, Bankruptcy Judge.

### *INTRODUCTION*

Before the Court is the Third Omnibus (Non–Substantive) Objection of the Reorganized Debtors to Misclassified 503(b)(9) Claims (the "Objection") filed by Goody's Family Clothing, Inc. and its affiliates (collectively, the "Debtors"). The Debtors argue that the claim of Added Value Services, Inc. ("AVS") is misclassified as an administrative claim under section 503(b)(9) of the Bankruptcy Code, which provides for an allowed administrative claim for the value of goods received by a debtor within 20 days of the bankruptcy filing because AVS provided services to the Debtors rather than selling "goods."

The Court finds that AVS's services do not constitute "goods" within the meaning of section 503(b)(9) and, thus, it is not entitled to an administrative claim under that section.

### *JURISDICTION*

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

### *PROCEDURAL AND FACTUAL BACKGROUND*[2]

On June 9, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy

---

1. This Opinion constitutes the Court's findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052.

2. The essential facts of this case are undisput-

Code.[3] The Debtors are a moderately priced family apparel retailer, which, as of the Petition Date, operated approximately 350 stores in small to midsize markets throughout the United States.

AVS was one of Debtors' vendors, providing certain services, including inspecting, ticketing, and repackaging apparel purchased from other vendors. During the twenty days prior to the Petition Date, AVS submitted the following invoices to Debtors:

| Invoice # | Invoice Date | Amount Due | Description |
| --- | --- | --- | --- |
| 8119 | 5/20/2008 | $21,028.70 | Remove bags, ticket, assort and pack |
| 8120 | 5/20/2008 | $ 4,459.00 | Unbag, ticket, assort and pack |
| 8145 | 5/30/2008 | $ 8,707.80 | Inspect Polos |
| 8146 | 5/30/2008 | $ 6,861.60 | Inspect Polo |
| 8147 | 5/30/2008 | $ 6,646.20 | Inspect Polos |
| 8148 | 5/30/2008 | $ 7,634.40 | Inspect Polos |
| 8149 | 5/30/2008 | $ 7,780.80 | Inspect Polos |
| | **Total** | **$63,118.50** | |

AVS timely asserted an administrative claim, pursuant to 11 U.S.C. § 503(b)(9), in the amount of $63,118.50.

Debtors filed the Objection asserting, *inter alia*, that AVS's claim is misclassified as a 503(b)(9) claim since the basis for that claim is services provided to the Debtors, not goods sold. AVS filed a response. The Court convened a hearing and, at the conclusion of that hearing, the Court took the matter under advisement and requested post-hearing briefing. The requested briefing is complete and this matter is ripe for decision.

### LEGAL DISCUSSION

█ Section 503(b)(9) provides:

(b) After notice and a hearing, there shall be allowed administrative expenses . . . including—

(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.[4]

The language of the statute provides for the allowance of an administrative claim provided the claimant establishes: (1) the vendor sold "goods" to the debtor; (2) the goods were received by the debtor within twenty days prior to filing; and (3) the goods were sold to the debtor in the ordinary course of business.[5] In this case, the Debtors argue that the services AVS provided to the Debtors do not constitute "goods" within the meaning of section 503(b)(9) and, therefore, AVS's claim is improperly classified. The Court agrees.

### I. "Goods" Sold to the Debtors.

█ Resolving the meaning of section 503(b)(9) begins with the language of the

---

ed.

**3.** Subsequently, the Court confirmed the Debtors' plan of reorganization. Unfortunately, the reorganized Debtors were unprofitable and they filed a second Chapter 11 case in January, 2009. The second Chapter 11 case does not impact the issues before the Court in this matter.

**4.** 11 U.S.C. § 503(b)(9).

**5.** *In re Brown & Cole Stores, LLC*, 375 B.R. 873, 878 n. 7 (9th Cir.BAP2007).

statute itself.[6] The right to a 503(b)(9) administrative expense is limited to vendors of "goods." [7] However, "goods" is not defined in the Bankruptcy Code. "When Congress amends the bankruptcy laws, it does not write 'on a clean slate.' " [8] Rather, "where words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense." [9]

 Article 2 of the Uniform Commercial Code ("UCC") governs sales of goods in 49 states.[10] Section 2–105(1) provides the following definition:

"Goods" means all things (including specially manufactured goods) which are *movable at the time of identification to the contract for sale* other than the money in which the price is to be paid, investment securities (chapter 8 of this title) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (§ 47–2–107).[11]

Use of the UCC Article 2's definition of "goods" in interpreting section 503(b)(9) is suggested in a leading treatise [12] and has been adopted by bankruptcy courts examining this issue.[13] Given the near unanimous nationwide adoption of Article 2 of the UCC, the Court concludes that the term "goods" in section 503(b)(9) conforms with the meaning given in U.C.C. § 2–105(1); "goods" are something that is "moveable." [14] This approach is supported by the perhaps surprising fact that the definition of "goods" set forth in the UCC is consistent with the ordinary, "non legal" meaning of the word: "property or possessions; esp. moveable property." [15]

 In addition, the construction of the Bankruptcy Code itself excludes services

---

**6.** *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

**7.** 11 U.S.C. § 503(b)(9).

**8.** *Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

**9.** *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59, 31 S.Ct. 502, 55 L.Ed. 619 (1911); *see also Neder v. United States*, 527 U.S. 1, 21, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)("It is a well established rule of construction that '[w]here Congress uses terms that have accumulated settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.' ") (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)).

**10.** *See* U.C.C. § 2–101 (short title of Article 2 is "Sales"); § 2–102 (scope of Article 2 covers "transactions in goods").

**11.** U.C.C. § 2–105(1) (emphasis added).

**12.** 4 COLLIER ON BANKRUPTCY ¶ 503.16[1] (15th ed. rev.2008) ("Goods is not defined in the Code and so the definition used in Article 2 of the Uniform Commercial Code is likely to be used").

**13.** *In re Plastech Engineered Prods.*, 397 B.R. 828, 836 (Bankr.E.D.Mich.2008) (adopting UCC Article 2 definition of goods for 503(b)(9) claims); *In re Samaritan Alliance, LLC*, 2008 WL 2520107, at * 3 (Bankr.E.D.Ky.2008) (same). *See also In re Deer*, No. 06–02460, 2008 WL 723982, **1–2 (Bankr.S.D.Miss. June 14, 2007) (adopting UCC Article 9 definition of goods for 503(b)(9) claims).

**14.** Although the Court finds the term "goods" conforms with the UCC definition of "goods," interpretation of the Bankruptcy Code is a federal matter, and not controlled by state law. *See In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1055 (3d Cir.1993) ("It is axiomatic that federal law governs questions involving the interpretation of a federal statute.").

**15.** I SHORTER OXFORD ENGLISH DICTIONARY 1132 (6th ed.2007).

from the meaning of the term "goods." The term "goods" appears throughout the Bankruptcy Code disjunctively connected with the term "services":

- The term 'bankruptcy assistance' means any *goods or services* sold or otherwise provided.[16]
- The term "security"—does not include—debt or evidence of indebtedness for *goods sold and delivered or services rendered.*[17]
- The term 'luxury *goods or services'* does not include *goods or services* reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor.[18]
- "new value" means money or money's worth in *goods, services, or new credit.*[19]
- [Court may order appointment of examiner if] the debtor's fixed, liquidated, unsecured debts, other than debts for *goods, services, or taxes,* or owing to an insider, exceed $5,000,000.[20]

"Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise."[21] Since the term "goods" and the term "services" are disjunctively connected throughout the Bankruptcy Code, these terms must be ascribed separate meanings; "goods" cannot include services. The use of the term "goods" in section 503(b)(9) must have the same meaning as is has throughout the Bankruptcy Code.[22] Therefore, under the plain meaning of the term "goods" in both the UCC and the English language and based upon the distinction between "goods" and "services" throughout in the Bankruptcy Code, a claim for an administrative expense under section 503(b)(9) cannot be a claim for services provided.

In this case, the invoices that are the basis for AVS's claim are for: (1) the inspection of garments that the Debtors purchased from another vendor; and (2) unpacking, ticketing, assorting and repackaging garments the Debtors purchased from another vendor. Such activities do not qualify as "goods" within the meaning of section 503(b)(9). Under the definition of goods in the UCC section 2–105(1), "goods" must be moveable. Here, although AVS performed the activities that constitute the basis of the claim on "things which are moveable," the actual activities AVS "sold" are properly characterized as intangible services. Furthermore, since the structure of the Bankruptcy Code specifically excludes services from "goods," the services AVS performed are not "goods."

AVS argues it "did ship goods to the Debtors." This assertion is correct; the return of the garments after AVS per-

---

**16.** 11 U.S.C. § 101(4A) (emphasis added).

**17.** 11 U.S.C. § 101(49)(B)(vii) (emphasis added).

**18.** 11 U.S.C. § 523(a)(2)(C)(ii)(II) (emphasis added).

**19.** 11 U.S.C. § 547(a)(2) (emphasis added).

**20.** 11 U.S.C. § 1104(c)(2) (emphasis added).

**21.** *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979).

**22.** *Koons Buick Pontiac GMC, Inc. v. Nigh,* 543 U.S. 50, 60, 125 S.Ct. 460, 160 L.Ed.2d 389 (2004) "Statutory construction is a 'holistic endeavor.'" (quoting *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)). *Wachovia Bank, N.A. v. United States,* 455 F.3d 1261, 1267 (11th Cir.2006). "[W]e do not read words or strings of them in isolation. We read them in context. We try to make them and their near and far kin make sense together, have them singing on the same note, as harmoniously as possible."

formed its inspection, tagging, and packaging services requires shipping of the actual garments. However, section 503(b)(9) does not provide for the allowance of an administrative claim for goods *shipped*. Instead, section 503(b)(9) allows an administrative claim for goods *sold*. At the hearing, AVS admitted that Debtors were invoiced separately for the garments from the garment distributor. Although AVS had possession of the garments, and shipped the garments to Debtors, AVS never had title to the garments, and thus did not *sell* the garments to Debtors.[23]

■ The Court therefore concludes that AVS did not sell "goods" to the Debtors.[24] Accordingly, AVS's claim is misclassified as an administrative expense under section 503(b)(9) and the Objection is sustained.

## II. "Value" of Goods Received by the Debtors.

■ AVS also argues that "[t]he definition of 'value of goods' is the buying price of the goods including any costs required to make the goods saleable." AVS cites no authority for this proposition. Nonetheless, AVS argues that since the garments it inspected, tagged, assorted and repackaged were not saleable without those services, it contributed to the "value of goods," and is entitled to a section 503(b)(9) administrative expense. The Court disagrees. The Court in *In re Plastech Engineered Products* directly addressed this argument.

> [T]he word *received* modifies the word *goods* in § 503(b)(9). It is the *goods* and not the *value* that must be received by the debtor to trigger § 503(b)(9). The word *value* in the statute is merely the measure of the amount of the "allowed administrative expense" under § 503(b)(9). The statute does not say *value received*. Instead, it says *goods received*. [The] contention that § 503(b)(9) requires only that a debtor receive *value* and not actually receive *goods* is strained and ignores the plain meaning of the language used in the statute.[25]

This Court agrees. There is little doubt that AVS provided "value" to the Debtors. However, in the context of section 503(b)(9), *value* is the measurement of the amount of the administrative claim. In order to have an administrative claim under section 503(b)(9), AVS must first meet the requirements, namely: (1) the vendor must sell "goods" to the debtor; (2) the goods must be received within twenty days prior to filing; and (3) the goods must be

---

**23.** *See* U.C.C. § 2–106(1) ("A 'sale' consists in the passing of title from the seller to the buyer for a price").

**24.** Debtors argue in their papers that the only "goods" AVS could conceivably have sold Debtors are the tags and tickets AVS affixed to the garments. Debtors then argue this Court should apply the "predominant factor test" to determine whether, based on the "predominant factor," the contract was for goods or services. *See, e.g., BMC Indus., Inc. v. Barth Indus., Inc.,* 160 F.3d 1322, 1329–30 (11th Cir.1998) ("Most courts follow the 'predominant factor' test to determine whether such hybrid contracts are transactions in goods, and therefore covered by the UCC, or transactions in services, and therefore exclud-

ed."). The Court need not decide the issue in this case. AVS has failed to raise this argument in its papers, or at the hearing. Moreover, AVS has not presented any evidence regarding the value of the tickets and tags, nor submitted a separate administrative claim for the value of said tickets and tags. *In re Insilco Techs., Inc.,* 309 B.R. 111, 114 (Bankr. D.Del.2004). "An administrative expense claimant bears the burden of establishing that its claim qualifies for priority status." Therefore, since no evidence was presented on the issue, it is unnecessary to decide whether the "predominant factor test" applies.

**25.** *In re Plastech Engineered Prods. Inc.,* 2008 WL 5233014, at *2 (Bankr.E.D.Mich.2008).

sold in the ordinary course of business.[26] AVS has not shown it meets these requirements.[27] Since AVS's claim does not meet the requirements of section 503(b)(9), the issue of value is of no moment.

## CONCLUSION

For the foregoing reasons, the Court finds that the term "goods" does not encompass services, and therefore AVS's claim is misclassified as an administrative expense under section 503(b)(9). Accordingly, the Debtors' Objection is SUSTAINED.

Counsel for the Debtors is directed to submit an order under certification of counsel.

**In re Theresa Ann BOYD, Debtor.**

**No. 08–14279 (RTL).**

United States Bankruptcy Court,
D. New Jersey.

Dec. 9, 2008.

---

**26.** *In re Brown & Cole Stores, LLC,* 375 B.R. 873, 878 n. 7 (9th Cir.BAP2007).

**27.** *In re Insilco Techs., Inc.,* 309 B.R. 111, 114 (Bankr.D.Del.2004). "An administrative expense claimant bears the burden of establishing that its claim qualifies for priority status."

138

William M.E. Powers III, Esq., Powers Kirn, LLC, Attorney for U.S. Bank Home Mortgage.

Howard Schmidt, Esq., Attorney for Albert Russo, Standing Chapter 13 Trustee.

Steven Abelson, Esq., Attorney for Debtor.

## OPINION

RAYMOND T. LYONS, Bankruptcy Judge.

## INTRODUCTION

Before the court is a chapter 13 secured creditor's fee application for post-petition, preconfirmation attorney's fees incurred in the course of responding to the Debtor's motion to modify its claim. The issue is whether a secured creditor is entitled to include these post-petition, preconfirmation attorney's fees in its claim, essentially shifting its costs of litigation to the Debtor. Under § 1322(e) of the Bankruptcy Code "the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e). Since the note contains a fee shifting provision that is enforceable under New Jersey law, the mortgagee's post-petition, preconfirmation fees may be included in the amount necessary to cure the default.

## JURISDICTION

This court has jurisdiction of this contested matter under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all proceedings arising under Title 11 of the United States Code to the bankruptcy court. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B) and (L) concerning the allowance of a claim and confirmation of a plan.

## BACKGROUND

This fee application arises in a chapter 13 case. Here, the Debtor owns a residence together with her spouse encumbered by two mortgages. The first mortgage is held by U.S. Bank Home Mortgage (hereinafter "US Bank") and a second is held by Bank of America. Both claims are oversecured, as the Debtor's bankruptcy schedule lists the value of her one half interest in the residence to be higher than the combined secured claims.

The Debtor entered into her mortgage agreement with U.S. Bank on April 24, 2001. Included in the agreement was a fee-shifting provision in the event of a default:

6. BORROWER'S FAILURE TO PAY

. . .

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

Roughly two years later, on August 30, 2003, the mortgage was modified following some hardship and a subsequent default. The Debtor defaulted a second time and the mortgage was modified once more on June 1, 2007. On January 8, 2008, the Debtor defaulted for a third time, and U.S. Bank commenced a foreclosure proceeding in state court.

Just prior to the entry of the foreclosure judgment, on March 11, 2008, the Debtor filed a petition under chapter 13 of the Bankruptcy Code. The Debtor also filed a chapter 13 plan in concert with her petition. The plan primarily proposed to cure the arrears the Debtor owed to U.S. Bank and Bank of America.

US Bank timely filed its proof of claim on April 28, 2008, for $211,527.11. In addition to the unpaid principal of $166,225.03 and the pre-petition arrears of $12,686.12, U.S. Bank's claim included escrow shortages, legal fees, and interest to amortize these advances. The Debtor objected to U.S. Bank's claim. Multiple briefs were filed by the Debtor and U.S. Bank in support of their positions. Ultimately, this court overruled the Debtor's objection and allowed U.S. Bank's claim as filed.

The instant fee application arises out of the additional legal fees incurred by U.S. Bank in litigating the Debtor's objection to its claim. The amount sought is $3,642.50, less $625 already included in the original proof of claim. This total figure was calculated using the lodestar method and itemized the time spent responding to the Debtor's objection to its claim and opposing confirmation of the Debtor's plan. In a supplemental pleading, U.S. Bank produced proof that it had been billed for, and approved payment of, the same amount of attorney's fees requested in its application.

The Debtor now objects that: (i) there is no basis for the creditor to charge back the Debtor, (ii) the amount of fees are unreasonable, (iii) it is questionable whether the mortgagee actually incurred the amount of fees requested, (iv) part of the mortgagee's objection to confirmation was overruled, and (v) allowing additional fees to the mortgagee would chill Debtor's rights under the Bankruptcy Code. She argues, "If this application is permitted, no debtor would ever dare challenge a creditor for fear of retribution." The Trustee also objects, citing the fees as excessive, without legal authority, and without disclosure of the fee agreement between the creditor and its attorney. The court reviewed the detailed time entries and the hourly rate and finds the fees reasonable. The creditor provided proof that its obligation to pay attorney's fees matches the amount of reimbursement being sought from the Debtor. Additionally, the court rejects the argument that the fees should be disallowed because the mortgagee's objection to confirmation was overruled; this was a minor issue that did not generate significant legal fees. The only issue that merits further consideration is the argument by the Debtor and the Trustee that there is no legal basis to require the Debtor to reimburse the mortgagee for its legal fees.

### DISCUSSION

The issue before the court is whether a secured creditor in a chapter 13 case is entitled to its post-petition, preconfirmation attorney's fees as part of the arrears to be cured. The Third Circuit squarely addressed this issue in the non-precedential opinion, *Smiriglio v. Hudson United Bank (In re Smiriglio)*, 98 Fed.Appx. 914 (3d Cir.2004). The debtors in *Smiriglio* had defaulted on a guarantee agreement that was secured by their personal residence. Prior to the filing of a foreclosure action by the mortgagee, the debtors commenced their bankruptcy case. *Id.* at

916. The debtors intended to retain their home by proposing a cure plan under chapter 13.[1] The mortgagee's oversecured claim became the subject of litigation as the parties fought over the mortgagee's lien position on the real property. The dispute was resolved in favor of the mortgagee, and the mortgagee moved to include post-petition, preconfirmation attorney's fees into its arrearage claim, as provided for in the note and guarantee. *Id.* at 914. Both the bankruptcy court and district court sided with the creditor. *Id.*

The Third Circuit first observed that the New Jersey law on attorney's fees was consistent with the American Rule: "[T]he parties bear the burden of their own counsel fees." *Id.* at 915 (citing *McKeown–Brand v. Trump Castle Hotel & Casino,* 132 N.J. 546, 626 A.2d 425, 429 (1993)); *see also, Hatch v. T & L Assocs.,* 319 N.J.Super. 644, 726 A.2d 308, 309 (App.Div.1999). Next, the Third Circuit acknowledged that New Jersey law also respected the general right to contract and allowed for the shifting of reasonable attorneys fees where specified in an agreement. *Smiriglio,* 98 Fed.Appx. at 915 (citing *Alcoa Edgewater No. 1 Fed. Credit Union v. Carroll,* 44 N.J. 442, 210 A.2d 68, 72 (1965); *Belfer v. Merling,* 322 N.J.Super. 124, 730 A.2d 434, 443 (1999)). The agreement in Smiriglio provided that the debtor was obligated to reimburse the lender for its legal fees and since that agreement was enforceable under New Jersey law, "the amount of the arrearage must be 'determined in accor-

dance with the underlying agreement and applicable nonbankruptcy law,' as provided under § 1322(e)." *Smiriglio,* 98 Fed. Appx. at 915 (quoting 11 U.S.C. § 1322(e)). The Third Circuit affirmed the decisions of the bankruptcy and district courts allowing the inclusion of the lender's legal fees and expenses in the arrears cured under the plan.

■ The facts of this case are similar to those present in *Smiriglio.* As in *Smiriglio,* the Debtor entered into and defaulted upon a mortgage agreement with an explicit fee-shifting clause. The Debtor then commenced a bankruptcy case under chapter 13 and sought to retain her residence through a cure plan. During the bankruptcy case, the mortgagee had to defend its claim, accumulating legal fees in the process. The mortgagee then sought to amend its claim to be compensated for its attorney's fees. Consequently, the legal conclusions that the Third Circuit arrived at in *Smiriglio* are directly applicable to the instant case. By proposing a cure plan, the Debtor is similarly obligated by § 1322(e) to cure her arrears according to the underlying agreement and applicable nonbankruptcy law. The underlying agreement is enforceable under New Jersey law, so the amount necessary to cure the arrears must include the mortgagee's reasonable attorney's fees and expenses.

Neither the Debtor nor the Trustee have argued that U.S. Bank's fees should be limited by the New Jersey Court Rule 4:42–9(a)(4).[2] They both maintain that fee

1. In chapter 13, a debtor may retain their real property and cure a default on a secured claim through the chapter 13 plan. Section 1332(e) provides:

Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in

accordance with the underlying agreement and applicable nonbankruptcy law.
11 U.S.C. § 1332(e).

2. New Jersey Court Rule 4:42–9, in relevant part, provides:
4:42–9. Counsel Fees
(a) Actions in Which Fee Is Allowable. No fee for legal services shall be allowed in the taxed costs or otherwise, except ...

shifting is inappropriate. Their position is refuted by § 1322(e) and *Smiriglio.* There is no reason for this court to consider whether U.S. Bank's application for reimbursement of attorney's fees should be limited by the New Jersey Court Rule.[3]

■ While *Smiriglio* is a non-precedential Third Circuit opinion, this court is comfortable in relying upon it. It is clear that a non-precedential opinion ("NPO") of the Third Circuit is not precedent for the district courts below. *In re: Grand Jury Investigation, No. 06–1474,* 445 F.3d 266, 276 (3d Cir.2006) (reasoning that because the Third Circuit's Internal Operating Procedures do not regard NPOs as precedent binding upon itself, NPOs "are not precedents for the district courts of this circuit"). However, nothing bars the lower courts for relying on NPOs as strongly persuasive authority. *Id.* ("[The Third Circuit] does not prohibit citation to NPOs but the members of this court regard them for what they are worth-the opinion of three members of the court in a particular case."); *Prudential Property and Cas. Ins. Co. v. Jefferson,* 185 F.Supp.2d 495, 499 n. 1 (W.D.Pa.2002) ("An 'unreported-not precedential' opinion [of the Third Circuit] is not binding authority, but may be cited as persuasive authority."); *see also, Drinker by Drinker v. Colonial School Dist.,* 78 F.3d 859, 864 n. 12 (3d. Cir.1996) (the Third Circuit noting that because of the factual similarity to a prior NPO, it looked to the opinion as "a paradigm of the legal analysis we should here follow"); *In re Hess,* 209 B.R. 79, 82 n. 3 (6th Cir.BAP 1997) ("Although unpublished decisions of the Sixth Circuit are not binding precedent, they can be cited if persuasive, especially where there are no published decisions which will serve as well."); *In re Mays,* 256 B.R. 555, 558–59 (Bankr.D.N.J. 2000) (reasoning that absent any prohibition of the use of unpublished opinions, they may be relied upon).

(4) In an action for the foreclosure of a mortgage, the allowance shall be calculated as follows: on all sums adjudged to be paid the plaintiff amounting to $5,000 or less, at the rate of 3.5%, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess over $5,000 and up to $10,000 at the rate of 1.5%; and upon the excess over $10,000 at the rate of 1%, provided that the allowance shall not exceed $7,500. If, however, application of the formula prescribed by this rule results in a sum in excess of $7,500, the court may award an additional fee not greater than the amount of such excess on application supported by affidavit of services. In no case shall the fee allowance exceed the limitations of this rule.