In the Matter of **WEZBRA DAIRY, LLC, Debtor.**

No. 12–12592.

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

June 3, 2013.

Leonard W. Copeland, Office of the United States Trustee, South Bend, IN, for U.S. Trustee.

Daniel J. Skekloff, Scot T. Skekloff, Skekloff & Skekloff, LLP, Fort Wayne, IN, for Debtor.

### DECISION ON MOTIONS FOR ADMINISTRATIVE CLAIMS

ROBERT E. GRANT, Chief Judge.

The debtor in this chapter 11 case operates a dairy farm in northwest Ohio. As part of that operation, it entered into agreements with five brothers—Louis, Dennis, Roger, John and Matt Niese—for silage. The first of these was a silage agreement by which one or more of the Niese brothers would grow a specified number of acres of corn silage for the debtor, and the debtor was to pay the agreed upon price (which was determined by a formula) in fourteen equal monthly installments; it also granted the producer a license to store the silage on the debtor's property. The second agreement was derived from the first; in particular from the license to store the silage on the debtor's property. This was a title retention agreement. It acknowledged that title to the silage remained with the producer and gave the debtor the first right to purchase it, from time to time, but only for consumption by its dairy herd. Until it did so, title remained with the Nieses. In the meantime, the debtor was responsible for the care and protection of the silage, bore the risk of any loss, and was to insure it.

The Nieses have filed motions for administrative expenses on account of the silage the debtor used during the twenty days prior to the petition. The motions are based upon 11 U.S.C. § 503(b)(9) and have drawn objections from a creditor of the debtor: Bank of America. The matter is before the court following trial of the issues raised by the motions and the bank's objections to them.[1]

Section 503(b)(9) of the Bankruptcy Code gives an administrative expense to a pre-petition creditor for "the value of any goods received by the debtor within 20 days before" the commencement of the case, which were "sold to the debtor in the ordinary course of [the] debtor's business." 11 U.S.C. § 503(b)(9). The parties do not dispute that the silage movants provided is a good, that it was sold to the debtor in the ordinary course of its business, or the value of the silage the debtor used during the twenty days prior the petition. Their dispute turns upon the question of when that silage was "received." The Nieses argue the debtor received it when it was removed from the bunkers and fed to debtor's livestock. The bank argues the silage was received when it was placed in the bunkers on the debtor's property, following harvest, in the late summer and fall of 2011, months before the case began.

■ The term "received" is not defined in the Bankruptcy Code. Other courts interpreting § 503(b)(9) have examined its history and its relationship to § 546(c), which governs reclamation. Having done so, they conclude that the terms used in § 503(b)(9)—including "received"—should be given the same meaning they have in § 546(c), and, since § 546(c) is derived from the reclamation provisions of the Uniform Commercial Code, the court may look to the UCC for guidance. *See e.g., In re Momenta, Inc.,* 455 B.R. 353, 357–59 (Bankr.D.N.H.2011), *aff'd Ningbo Chenglu Paper Products Mfg. Co., Ltd. v. Momenta, Inc.,* 2012 WL 3765171 (D.N.H.2012); *In re Circuit City Stores, Inc.,* 432 B.R. 225, 229 (Bankr.E.D.Va.2010). *Cf., In re Goody's Family Clothing Inc.,* 401 B.R. 131 (Bankr.D.Del.2009) (looking to the UCC to define the term "goods"). *See also,* 4–503 Collier on Bankruptcy ¶ 503.16.

■ Although "receive" is not defined by the UCC, the term "receipt" is, and it has been used in interpreting "received" in § 546(c) and § 503(b)(9). Both the UCC and Ohio's version of it define "receipt" as "taking physical possession" of the goods. U.C.C. § 2–103(1)(c); O.R.C.

---

1. The Nieses have objected to Exhibits C and D accompanying the bank's post-trial brief and ask that they be stricken. Those exhibits are excerpts from the deposition testimony of Johanna van Wezel–Denissen. The basis for the objection is that the excerpts were not offered or admitted into evidence at trial and cannot be considered now. In response, the bank claims that the deposition testimony is simply consistent with the testimony adduced at trial and, in the absence of a trial transcript, were offered to assist the court. To begin with, if the court wanted such assistance or a transcript of the testimony at trial it would have requested it, and if the bank's counsel thought a transcript was necessary it should have obtained one. More importantly, if one party offers part of a deposition into evidence, the other party is supposed to have the opportunity to require other parts of that same deposition to be introduced into evidence as well, or to introduce any other parts itself. Fed.R.Civ.P. Rule 32(a)(6). By waiting until after trial the bank has deprived movants of that opportunity. If the bank wanted the court to consider that deposition testimony it should have offered it at trial or, having failed to do so, asked the court to reopen the proceedings. It should not attempt to submit evidence that was not offered at trial by attaching it as an exhibit to a post-trial brief, and the court should not consider such evidence. The Nieses' objection is sustained and those exhibits are stricken. *See, Henn v. National Geographic Soc.,* 819 F.2d 824, 831 (7th Cir.1987).

§ 1302.01(A)(3).[2] This possession may be actual or constructive, *In re Western Iowa Limestone, Inc.,* 538 F.3d 858, 864 (8th Cir.2008); *In re Momenta, Inc.,* 455 B.R. 353, 359 (Bankr.D.N.H.2011); *In re Mayer Pollock Steel Corp.,* 157 B.R. 952, 960 (Bankr.E.D.Pa.1993), and occurs when the seller "can no longer stop delivery and is left only with the remedy of reclamation."[3] *In re Bill's Dollar Stores, Inc.,* 164 B.R. 471, 475 (Bankr.D.Del.1994). Thus, the key to determining when goods are received is possession—whether actual or constructive[4]—not title.

 "A person who knowingly has direct physical control over a thing, at a given time, is ... in actual possession of it." *Black's Law Dictionary* 1163 (6th ed. 1990). From the time the silage was delivered to and placed in the bunkers on its property the debtor had control over it. The silage was located on the debtor's property; the debtor was responsible for its care and protection; the debtor bore the risk of any loss; and the debtor determined when and how much silage would be removed from the bunkers to feed its dairy herd. It is extremely difficult to see how all of this does not constitute actual physical possession, notwithstanding the locus of title. This reality is not changed by the license debtor granted the movants or attempts to characterize the arrangement as a bailment, with debtor acting as a bailee.[5] The court concludes that the debtor received the silage when it was delivered to and placed in the bunkers on its property and not when it was removed and fed to the debtor's livestock. *Accord, In re Circuit City Stores, Inc.,* 432 B.R. 225 (Bankr. E.D.Va.2010); *In re Pridgen,* 2008 WL 1836950 (Bankr.E.D.N.C.2008).

The debtor received the silage more than twenty days prior to the commencement of the case. The motions for allowance of administrative expense claims filed by Louis Niese; John and Matt Niese; and Dennis and Roger Niese should be DENIED and an order doing so will be entered.

---

2. The parties' agreements provide that they are governed by Ohio law; so, to the extent state law applies, it is that of Ohio. *See, Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *In re QDS Components, Inc.,* 292 B.R. 313, 321 (Bankr. S.D.Ohio 2002). Yet, in the absence of guidance from Ohio's courts, this court can look to decisions from other jurisdictions applying U.C.C. § 2–103(1)(c) for assistance in interpreting Ohio's version of that same statute. *In re Grubbs Construction Co.,* 319 B.R. 698, 712 (Bankr.M.D.Fla.2005) *citing, QDS Components, Inc.,* 292 B.R. at 321 n. 3.

3. In general terms, the seller's right to stop delivery ends when goods are delivered to the buyer or the buyer's agent. *See,* U.C.C. § 2–705(2); *Matter of Marin Motor Oil, Inc.,* 740 F.2d 220, 225 (3rd Cir.1984); *Donegal Steel Foundry Co. v. Accurate Products Co.,* 516 F.2d 583, 590 (3rd Cir.1975); *In re R.F. Cunningham & Co., Inc.,* 2006 WL 3791329, *2 (Bankr.E.D.N.Y.2006). It could be said that this ends the seller's ability to control the goods.

4. Constructive possession commonly occurs when goods are delivered to the buyer's agent, often a bailee, and the agent has actual possession of them. *See, Marin Motor Oil,* 740 F.2d at 225–26; *Mayer Pollock Steel Corp.,* 157 B.R. at 960.

5. The essence of a bailment is that the thing bailed will be returned to the owner at the end of the arrangement. *Donegal Steel,* 516 F.2d at 589–90; *In re Neumann,* 182 B.R. 502, 505–06 (Bankr.N.D.Ohio 1995). Here, there was no such expectation. Quite to the contrary, all the parties understood that the silage would be fed to the debtor's dairy herd; it would not be returned to the movants, but was, instead, to be paid for.