PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

⸺⸺⸺

No. 16-1357

⸺⸺⸺

IN RE: WORLD IMPORTS, LTD., ET AL,
Debtors


HAINING WANSHENG SOFA CO., LTD,
FUJIAN ZHANGZHOU FOREIGN TRADE CO., LTD,
Appellants

⸺⸺⸺

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D.Pa. No. 2-14-cv-04920)
District Judge: Honorable Petrese B. Tucker

⸺⸺⸺

Argued March 8, 2017
Before: HARDIMAN, KRAUSE, *Circuit Judges*, and
STENGEL, *District Judge*.[*]

(Filed: July 10, 2017)

⸺⸺⸺

[*] The Honorable Lawrence F. Stengel, United States
District Court for the Eastern District of Pennsylvania, sitting
by designation.

Kirk B. Burkley      [Argued]
Daniel R. Schimizzi
Bernstein-Burkley
707 Grant Street
Suite 2200, Gulf Tower
Pittsburgh, PA 15219
          *Counsel for Appellants*

David L. Braverman        [Argued]
Helen M. Braverman
John E. Kaskey
Braverman Kaskey
1650 Market Street
One Liberty Place, 56th Floor
Philadelphia, PA 19103
          *Counsel for Appellees*

————————

OPINION OF THE COURT

————————

HARDIMAN, *Circuit Judge*.

This appeal involves a question of bankruptcy law that has important ramifications for a creditor that sells goods to a debtor soon before the debtor files a Chapter 11 bankruptcy petition. Under 11 U.S.C. § 503(b)(9), a creditor may recover as a priority administrative expense the value of goods "received by the debtor within 20 days before" the bankruptcy petition is filed. In *In re Marin Motor Oil, Inc.*, this Court interpreted a related provision of the Bankruptcy Code (11 U.S.C. § 546(c)), and held that "receipt" occurs when the buyer takes physical possession of the goods. 740

2

F.2d 220, 224–25 (3d Cir. 1984). Does the word "received" in § 503(b)(9) likewise require physical possession? We hold that it does.

I

The facts of this appeal are undisputed. Appellants Haining Wansheng Sofa Company and Fujian Zhangzhou Foreign Trade Company (the Creditors) are Chinese companies that sold furniture and similar goods to World Imports (the Debtor) in the ordinary course of business. Those goods were shipped via common carrier from China to the United States "free on board" (FOB) at the port of origin, so the risk of loss or damage passed to World Imports upon transfer at the port.

The Haining shipment left Shanghai, China on May 26, 2013, and World Imports took physical possession of the goods in the United States on June 21, 2013. Fujian's goods were shipped on three separate dates from Xiamen, China on May 17, May 31, and June 7, 2013, and they were accepted in the United States within 20 days of July 3, 2013, the day on which World Imports filed its Chapter 11 petition.

Both Haining and Fujian filed Motions for Allowance and Payment of Administrative Expense Claims under 11 U.S.C. § 503(b)(9). Such claims are allowed if: "(1) the vendor sold 'goods' to the debtor; (2) the goods were received by the debtor within twenty days [before the bankruptcy] filing; and (3) the goods were sold . . . in the ordinary course of business." *In re Goody's Family Clothing, Inc.*, 401 B.R. 131, 133 (Bankr. D. Del. 2009).

The dispositive question in the Bankruptcy Court was whether World Imports "received the goods within 20 days prior to the bankruptcy filing." *In re World Imports, Ltd.* (*World Imports I*), 511 B.R. 738, 741 (Bankr. E.D. Pa. 2014). The parties agreed that Appellants shipped the goods from China "more than 20 days before the July 3, 2013 bankruptcy filing," and that World Imports "took physical possession of the goods in the United States fewer than 20 days before the bankruptcy filing." *In re World Imports, Ltd.* (*World Imports II*), 549 B.R. 820, 822 (E.D. Pa. 2016). They disagreed, however, about which action (shipment or physical acceptance) constituted receipt under § 503(b)(9).

In evaluating the question, the Bankruptcy Court began by acknowledging that the operative word "received" in § 503(b)(9) is not defined. It then rejected the argument advanced by Haining and Fujian that state law (*i.e.*, the Uniform Commercial Code) should "provide a rule of decision for [the] gap[] in [this] federal statute[]." *World Imports I*, 511 B.R. at 741. Instead, the Bankruptcy Court looked to the Convention on Contracts for the International Sale of Goods (CISG)—which it found governed disputes arising between the Debtor and Creditors—as a treaty that preempts the Uniform Commercial Code (UCC) in this case. Like the Bankruptcy Code, the CISG does not define the term "received," so the Court looked to international commercial terms (Incoterms), which are incorporated into the CISG. And although no Incoterm defines "received," the incoterm governing FOB contracts makes clear that the risk of damage or loss transfers to the buyer when the seller delivers the goods to the common carrier's vessel. *Id.* at 745 (quoting FOB Incoterm). Because the risk of loss transferred at the port, the Bankruptcy Court concluded that the goods were

4

"constructively received" when shipped from China. *Id.* Appellants' motions were denied accordingly. *Id.* at 746.

The District Court affirmed the Bankruptcy Court and Haining and Fujian filed this appeal.

## II

The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157(b)(2)(B), and the District Court had appellate jurisdiction under 28 U.S.C. § 158(a)(1). "We have jurisdiction pursuant to 28 U.S.C. §§ 158(d), 1291 and exercise the same standard of review as the District Court when it reviewed the original appeal from the Bankruptcy Court." *In re Handel*, 570 F.3d 140, 141 (3d Cir. 2009). "Thus, we . . . exercise plenary review over the Bankruptcy Court's legal determinations." *Id.*

## III

At issue in this appeal is the definition of the term "received" as used in 11 U.S.C. § 503(b)(9). If World Imports received the goods when they were loaded onto the common carrier in China, then Appellants' claims for administrative priority fail. But if the goods were received only when World Imports took physical possession of them, then Appellants' claims are entitled to "the highest priority." *World Imports I*, 511 B.R. at 741. Based on the ordinary meaning of "received," the legislative context of the Bankruptcy Code, and persuasive decisions finding that Congress meant to use the UCC definitions for this particular amendment to the Bankruptcy Code, we hold that goods are "received" when the debtor or its agent takes physical possession of them.

## A

### 1

We begin, as we always do, with the text and context of the relevant statute: 11 U.S.C. § 503(b)(9). The Bankruptcy Code does not define the word "received," so "we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). And if the operative word "had at the time a well-known meaning at common law or in the law of this country, [it is] presumed to have been used in that sense unless the context compels to the contrary." *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59 (1911). The well-known meaning is especially salient for bankruptcy law because the Supreme Court has recognized that "[w]hen Congress amends the bankruptcy laws, it does not write 'on a clean slate.'" *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) (citation omitted).

The most recent edition of Black's Law Dictionary defines "receive" as "[t]o take . . . ; to come into possession of or get from some outside source." Black's Law Dictionary (10th ed. 2014). The 1990 edition of Black's defined "receive" as "[t]o take into possession and control; [to] accept custody of." Black's Law Dictionary 1433 (6th ed. 1990). The Oxford English Dictionary defines "receive," with respect to physical goods, as "[t]o take into one's hands or one's possession (something offered or given by another); to take delivery of (something) from another, either for oneself or for a third party." Oxford English Dictionary (3d ed. 2009). Although these definitions are not identical, they all require physical possession. Applying these definitions to § 503(b)(9), a debtor must "take" goods into its "possession," "custody," or "hands" in order to receive them.

6

The legal and dictionary definitions comport with the definition found in the UCC. Section 2–103(1)(c) defines "receipt" of goods as "taking physical possession of them." And because Article 2 of the UCC governed sales of goods in 49 states when 11 U.S.C. § 503(b)(9) was adopted, *see Goody's Family Clothing*, 401 B.R. at 134, we infer that Congress meant to adopt this "well-known meaning" of the term, *Standard Oil*, 221 U.S. at 59. *See In re Circuit City Stores, Inc.* (*Circuit City II*), 432 B.R. 225, 230 (Bankr. E.D. Va. 2010) (finding near-unanimous adoption of the UCC may have informed Congress's intended definition of the term "received"). World Imports has "presented [no]thing to suggest that Congress meant to deviate from the common and well known meaning of the word 'received' in drafting § 503(b)(9)" in 2005. *Id.* In fact, there is ample evidence from the statutory context that Congress relied on the UCC definition of the word. We turn to that context now.

2

Section 503(b)(9) was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23 (2005). Section 1227 of BAPCPA, entitled "Reclamation," did two things: (1) it amended § 546(c) to clarify the conditions placed on trustees and sellers that seek to reclaim goods sold to a debtor; and (2) it created § 503(b)(9) to add an administrative expense claim as an *exemption* from § 546(c)'s reclamation conditions. *See* BAPCPA § 1227.

The interrelationship between § 546(c) and § 503(b)(9) is explicit in the Bankruptcy Code. Section 546(c)(2) states: "If a seller of goods fails to provide notice . . . the seller still may assert the rights contained in section 503(b)(9)." Because

7

§ 503(b)(9) provides "an alternative remedy to reclamation," *In re Momenta, Inc.*, 455 B.R. 353, 357 (Bankr. D.N.H. 2011), it should be read and interpreted consistent with § 546(c).

In *In re Marin Motor Oil*, this Court held that the word "receipt" in § 546(c) means the same thing as the UCC's definition, namely, "taking physical possession." 740 F.2d at 224–25. In doing so, we found that Congress originally adopted § 546(c) in 1978 "in order to resolve the question [of] whether U.C.C. § 2–702(2) [(allowing reclamation)] applies where the debtor files for bankruptcy." *Id.* at 223 (footnote omitted). The "drafters of the Bankruptcy Code" basically "adopt[ed] 2–702(2) as part of the federal bankruptcy law," but with some procedural modifications. *Id.* We reasoned that because "Congress essentially borrowed [the reclamation provision] from the U.C.C.," it "also borrowed the standard definition of receipt." *Id.* at 225 n.9. There was no indication in *Marin* that the meaning of "receipt" could change depending on the terms of the contract at issue. Rather, we held that "receipt," as used in § 546(c), means "taking physical possession"—the UCC definition—as a matter of federal law. *Id.* at 224–25.[1]

---

[1] There is also a wide consensus among bankruptcy courts that because the § 546 right of reclamation "arises under § 2–702 of the UCC," *In re Circuit City Stores, Inc.* (*Circuit City I*), 416 B.R. 531, 536 (Bankr. E.D. Va. 2009), Congress meant for undefined terms in § 546(c), including "receipt," to take the meaning ascribed to them in the UCC at the time § 546 was enacted ("physical possession"). *See, e.g.*, *Circuit City II*, 432 B.R. at 228–29 (citing, *e.g.*, *In re Trico Steel Co., LLC*, 282 B.R. 318, 324 (Bankr. D. Del. 2002)); *In*

"It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). When two terms are "functional[ly] equivalent" and used in the same context, they should be treated identically. *Gomez-Perez v. Potter*, 553 U.S. 474, 481 (2008).

The context of § 503(b)(9) is clear: it is an exemption to the general bankruptcy reclamation scheme established by § 546(c). *See* § 546(c)(2). Given the interrelationship between these two provisions and our holding that Congress meant for terms used in § 546(c) to bear the definition used in the UCC at the time of BAPCPA's enactment, it follows that the UCC definitions also apply to the § 503(b)(9) exception.[2] It follows that since we have already held in *Marin* that the term "receipt" used in § 546(c) means "taking physical

---

*re Bill's Dollar Stores, Inc.*, 164 B.R. 471, 474 (Bankr. D. Del. 1994).

[2] We note as we did in *Marin* that "[o]ur reliance on the [UCC] for determining the time of receipt does not mean that the definition of receipt under [the Bankruptcy Code] is a matter of state law and might change were an individual state to alter its [laws]." 740 F.2d at 225 n.9. Rather, Congress intended to use the UCC definition at that time (physical possession) and it is not subject to change absent an amendment to the Bankruptcy Code.

possession," 740 F.2d at 224–25, "received" means the same thing in § 503(b)(9).

Our conclusion is further supported by Congress's placement of §§ 546(c) and 503(b)(9) (and only those sections) under the heading "Reclamation" in Section 1227 of BAPCPA. *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) (noting importance of subchapter location for word's meaning). World Imports and the lower courts have pointed to nothing in the Bankruptcy Code that indicates that Congress intended a different definition for "received" between these two provisions in the same subchapter. On the contrary, the statutory scheme warrants a consistent interpretation of terms that appear in both § 546(c) and § 503(b)(9), as several courts have already held.[3]

Under § 546(c), notice for reclamation must be made within 45 days after goods are *received*, but §503(b)(9) provides an exemption for goods *received* within 20 days before bankruptcy. It strikes us as quite implausible that Congress meant for the date of receipt to be different between these provisions. Indeed, for this general-rule-and-exemption

---

[3] *See, e.g.*, *Ningbo Chenglu Paper Prods. Mfg. Co. v. Momenta, Inc.*, 2012 WL 3765171, at *6 (D.N.H. Aug. 29, 2012) ("Sections 503(b)(9) and 546 are related statutory provisions [and] . . . the word 'received' should be given the same meaning in both sections . . . ."); *In re Wezbra Dairy, LLC*, 493 B.R. 768, 770–71 & n.3 (Bankr. N.D. Ind. 2013) (relying on *Marin* and applying the UCC definition of "receipt" to § 503(b)(9)); *Circuit City I*, 416 B.R. at 535–37 (applying UCC definition of "goods" to § 503(b)(9)); *Goody's Family Clothing*, 401 B.R. at 135 (same).

scheme to make sense, the date of receipt must be fixed. The rules point to two time periods defined with respect to a fixed-date event: notice within 45 days of, or bankruptcy filing within 20 days of, the goods being received. As such, consistent with the statutory context and history, § 503(b)(9)—like § 546(c)—finds its definition in the UCC.

B

World Imports argues that despite the foregoing reasons, the goods in this case were constructively received upon delivery because they were delivered "FOB" to a common carrier. While it is true that a buyer may be deemed to have received goods when his agent takes physical possession of them, common carriers are not agents. Constructive receipt thus does not include "FOB delivery" to a common carrier, as the Bankruptcy Court and District Court assumed.

Delivery, or transfer of title or risk of loss, has been treated as distinct from actual receipt of goods by the buyer. The official comment to the UCC's definition of receipt makes this distinction:

> "Receipt" must be distinguished from delivery particularly in regard to the problems arising out of shipment of goods, whether or not the contract calls for making delivery by way of documents of title, since the seller may frequently fulfill his obligations to "deliver" *even though the buyer may never "receive" the goods*.

UCC § 2-103 cmt. 2 (emphasis added); *see also In re Trico Steel Co., LLC*, 282 B.R. 318, 324 (Bankr. D. Del. 2002) (describing this comment as "highlight[ing] the distinction between 'delivery' (when title passes) and 'receipt'"). A seller may deliver goods to a common carrier—thereby relinquishing title and risk of loss—some time before the goods are received by the buyer or its agent.

This Court in *Marin* explicitly stated that delivery and receipt of goods can occur at different times. *See* 740 F.2d at 225. We found that "the U.C.C. does not rely on the concept of 'title' for purposes of establishing the rights of buyers and sellers under the Code." *Id.* After finding that "receipt" in 11 U.S.C. § 546(c) is defined the same way as in the UCC (requiring physical possession), *id.* at 224–25 & n.9, we noted that the UCC "views goods given by a seller to a common carrier for delivery to a buyer as being in the possession of the common carrier not the buyer," *id.* at 225. Under this framework, the seller has "the right to stop delivery of the goods" while the common carrier remains in possession. *Id.* And "[t]his right to stop delivery applies regardless of which party bears the risk of loss, and regardless of which party is deemed to have 'title' to the goods while they are in the carrier's possession." *Id.* Only upon the buyer's physical possession does the seller's remedy convert to the "different right" of reclamation (governed in bankruptcy cases by § 546(c)). *Id.*

In other words, regardless of FOB status, under the UCC and Chapter 11, receipt does not occur until after the seller's ability to stop delivery ends—namely, upon the buyer's physical possession. *See id.* The upshot of all this is that the transfer of risk is not the same thing as receipt. *See, e.g.*, *Trico Steel*, 282 B.R. at 324 ("Although title may have

12

passed to [the buyer] pursuant to the terms of the contract, those terms did not transfer actual physical possession of the [goods].").

Rather than look to this precedent, the Bankruptcy Court and District Court asserted that "goods are perforce constructively received" when delivered to the common carrier FOB. *World Imports I*, 511 B.R. at 745; *accord World Imports II*, 549 B.R. at 824. In our view, that assertion misapplies the concept of constructive receipt.[4] While actual

---

[4] The lower courts looked to the CISG and Incoterms because they assumed the lack of definition for "received" in the Bankruptcy Code created a gap in the statute that could only be filled by reference to other federal law as the "rule of decision." *See World Imports I*, 511 B.R. at 741; *accord World Imports II*, 549 B.R. at 823. However, the Bankruptcy Code itself provides the relevant substantive law in this case, and in interpreting Code terms, we do not necessarily assume that Congress intended to adopt a definition from another source of federal law in the "absence of any explicit connector" between the Bankruptcy Code and a definition contained in another statute. *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 219–20 (1996). In addition, while the CISG and the Incoterm definition of FOB would certainly be relevant in a contract dispute between these parties, the relevant inquiry for this appeal is meaning of the Bankruptcy Code, not the intent of the parties. *See In re Armstrong World Indus., Inc.*, 432 F.3d 507, 512 (3d Cir. 2005); *see* Appellants' Br. 15. Finally, while we sometimes presume that federal statutes are to be interpreted consistent with treaties joined by the United States, *INS v. Cardoza-Fonseca*, 480 U.S. 421, 437–39

possession by an agent on behalf of a buyer constitutes constructive receipt, our caselaw is clear that common carriers do not qualify as agents. When a buyer "arrange[s] for a commercial barge operated by a common carrier to pick up the" goods from the seller, *Marin*, 740 F.2d at 222, the carrier does not act as an agent for purposes of receipt. *See id.* at 226 & n.13; *see also Trico Steel*, 282 B.R. at 323 (finding that "mere intermediaries in the transport" of goods do not qualify as agents). Bankruptcy courts in the Third Circuit have recognized this distinction since *Marin*. *See, e.g.*, *Mayer Pollock Steel Corp.*, 157 B.R. 952, 960 (Bankr. E.D. Pa. 1993) ("It is true that a constructive receipt will satisfy the requirements for reclamation if . . . the buyer's bailee receives possession of the goods . . . . However, receipt of the goods by a common carrier is not deemed constructive possession by a buyer, but rather is deemed to be possession by the common carrier." (citing *Marin*, 740 F.2d at 225)). Thus, the common carrier in this case did not act as an agent for World Imports.

In sum, there is no support for the idea that a buyer constructively receives goods when they are delivered to a common carrier, even if title and risk of loss pass at that time.

IV

Consistent with this Court's holding in *Marin*, we now hold that receipt as used in 11 U.S.C. § 503(b)(9) requires physical possession by the buyer or his agent. And because World Imports took physical possession within the 20-day period prior to commencement of its bankruptcy case, we will

(1987), we perceive no potential conflict between our holding here and the CISG. *See* Appellants' Br. 21–23.

14

reverse the order of the District Court and remand for proceedings consistent with this opinion.